IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STACY MARX, | ) | |
| AARON MARX, and | ) | |
| DAVID MARX (a minor), | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04 C 5688 |
| | ) | |
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In their First Amended Complaint (Dkt. No. 35) and Supplemental Complaint to First Amended Complaint Adding Defendants and Claims (Dkt. No. 146, "Supplemental Complaint"),[1] plaintiffs Stacy Marx, Aaron Marx, and their minor son David (collectively "Plaintiffs") allege numerous causes of action against defendants Levy Security Corporation ("Levy") and Levy employees Randall Thomas ("Thomas"), Quantis Smith ("Smith"), and Bernard T. Lapinard ("Lapinard"), among others.

On December 18, 2006, Thomas filed Defendant's Motion to Dismiss, (Dkt. No. 160), which was later joined by both Smith and Lapinard, (Dkt. No. 167). In their Motion to Dismiss,

---

[1] On May 16, 2006, the court granted the parties leave to amend all pleadings and add any additional parties on or before November 15, 2006. While the Federal Rules of Civil Procedure do not provide for a "Supplemental Complaint," the court adopts Plaintiffs' chosen language for ease of discussion. The proper label for this document is "Second Amended Complaint."

1

defendants Thomas, Smith and Lapinard (collectively "Defendants") argue that each of Plaintiffs' claims against them is barred by the applicable statute of limitations. Although originally only directed to counts 17, 21, 22 and 23 of the Supplemental Complaint, the scope of Defendants' motion was later expanded to encompass counts 10-14 of the First Amended Complaint, as these counts were addressed by both Plaintiffs and Defendants in their briefing before the court. For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiffs' claims arise out of events that allegedly occurred over a period of days from August 29, 2002 to September 2, 2002. During this time period, Plaintiffs allege that Stacy Marx was wrongfully detained at Northwestern Memorial Hospital ("NMH") and admitted to the Stone Institute of Psychiatry ("Stone Institute") against her will, in violation of her statutory, constitutional, and common law rights. At the time of these events, Stacy Marx was pregnant with her son David, who was born prematurely on September 20, 2002.

Plaintiffs' allegations in this case are both numerous and specific.[2] Because of the procedural posture of this motion, the court need not set forth the particular details of Plaintiffs' claims at this time. Plaintiffs generally allege that, after arriving at NMH around 12:00 noon on August 29, 2002 for a scheduled doctor's appointment, Stacy Marx was detained in the NMH emergency room and later admitted to the Stone Institute against her will and without the protections afforded her by law. Although Stacy Marx was allowed to call her husband and her

---

[2] Together, the First Amended Complaint and the Supplemental Complaint total 116 pages and include 24 separate counts.

2

attorney late on the evening of August 29, 2002, NMH and the Stone Institute refused to release Stacy Marx to the care of either her husband or her attorney until 12:00 noon on September 2, 2002, at which point she was released on her own recognizance. During the time that she was at NMH and the Stone Institute, Stacy Marx alleges that she was subjected to unwanted medical treatment, denied food and vitamins for herself and her prenatal baby, and was forcibly restrained.

In their original Complaint, filed on August 30, 2004, Plaintiffs named as defendants Northwestern Memorial Hospital, Northwestern Memorial Physicians Group, Northwestern Medical Faculty Foundation, Northwestern University - Feinberg School of Medicine, and various doctors, administrators, nurses, social workers, and other NMH staff. Additionally, Plaintiffs brought claims against "John Doe Northwestern Memorial Hosp, Security Company," "John Doe Security Guards," and "Jane Doe Security Guards."

On January 27, 2005, Plaintiffs filed a First Amended Complaint, identifying Levy Security Corporation as defendant "John Doe Northwestern Memorial Hosp, Security Company" and naming "Anthony Harris, Security Director" as an additional defendant in this case. Plaintiffs also retained their claims against "John Doe Guard" and "Jane Doe Guard," as well. On July 6, 2005, this court dismissed all defendants in this case with the exception of Levy Security Corporation. (Dkt. No. 84).

On November 15, 2006, Plaintiffs filed a Supplemental Complaint that named twelve current and former Levy employees as defendants, including Thomas, Smith, and Lapinard. The Supplemental Complaint again included "John Doe Guard" and "Jane Doe Guard" as defendants. Recently, on March 27, 2007, this court extended the deadline for the parties to file amendments

3

to the complaint or to add parties or claims until April 30, 2007.

## LEGAL STANDARD

Dismissal of a claim pursuant to Rule 12(b)(6) is proper only when it appears beyond a doubt that a plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Generally, the complaint is not required to allege all, or any, of the facts entailed by the claim. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714-15 (7th Cir. 2006). "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Id*. at 714. On the other hand, a plaintiff can plead herself out of court if she includes facts that undermine the allegations set forth in the complaint. *Kolupa*, 438 F.3d at 715. "Dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). In deciding whether to grant a 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *McMillan v. Collection Prof"ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

## ANALYSIS

Plaintiffs' allegations against Defendants fall into three main categories: (1) violations of the Illinois Mental Health and Developmental Disabilities Code, 405 Ill. Comp. Stat. 5/1-100, *et seq*. ("Mental Health Code"), Counts 10-14 and Count 21; (2) civil rights violations brought

pursuant to 42 U.S.C. § 1983, Counts 8 and 17;[3] and (3) common law torts, Counts 22 and 23. Within each category of claims, Defendants argue that the applicable statute of limitations has run.

1.  The Mental Health Code

The court begins its analysis with the various counts brought by Plaintiffs pursuant to the Mental Health Code. In relevant part, the Mental Health Code outlines the procedures to be followed when a patient is involuntarily admitted to a mental health facility, and governs patients' rights within that context. In Counts 10-14 and 21, Plaintiffs allege that Defendants violated the Mental Health Code by failing to advise Stacy Marx of her rights pursuant to the statue, violating these same rights, and failing to follow the applicable procedures set forth by the statute.

Defendants argue that the Mental Health Code does not establish a private right of action and that, "[a]t most, the Illinois Mental Health Code establishes a standard of care that may assist a plaintiff in making a prima facie case for negligence based on a violation of that statute." (Dkt. No. 161 at 3). Following this logic, Defendants argue that each of Plaintiffs' Mental Health Code claims is restricted to the statute of limitations for personal injury claims based on negligence, which is two years in Illinois. *See* 735 Ill. Comp. Stat. 5/13-202.

---

[3] In their First Amended Complaint, Plaintiffs brought Count 8 against "all defendants," alleging "violation of constitutional rights of Mrs. and Mr. Marx under 1st, 6th, and 14th amendments, federal and state law," pursuant to 42 U.S.C. § 1983. Plaintiffs further noted in their Supplemental Complaint that "the remaining Counts 8 and 10-14 of the First Amended Complaint are hereby pleaded by reference as to each of the John and Joe [sic] defendants now being named in this Supplemental Complaint." Although neither Plaintiffs nor Defendants specifically discuss Count 8 in regards to Defendants' motion, the court's analysis of the statute of limitations for Count 17 applies with equal force to Count 8. The court therefore addresses both counts in this order.

5

In support of their argument that the personal injury statute of limitations is applicable to Plaintiffs' Mental Health Code claims, Defendants cite to *Threlkeld v. White Castle Systems, Inc.*, 127 F. Supp. 2d 986, 989 (N.D. Ill. 2001). However, the court finds that *Threlkeld* does not support Defendants' proposition that the Mental Health Code "at most" describes the applicable standard of care for a cause of action sounding in negligence. On the contrary, Judge Bucklo explicitly found it "irrelevant" whether there was a private right of action under the Mental Health Code, because the plaintiff in that case had *only* proceeded on a theory of negligence. *Threlkeld*, 127 F. Supp. 2d at 989. The question of whether there is a private right of action under the Mental Health Code was not before the court in *Threlkeld*.

Similarly, although the court in *Cuyler v. United States* found that the plaintiff's claim for negligence could be based upon alleged violations of the Illinois Child Abuse Reporting Act, the court did not address the question of whether that was the only remedy available to the plaintiff in that case. *See Cuyler v. United States*, 37 F. Supp. 2d 1099, 1102-03 (N.D. Ill. 1999) ("For starters, this Court need not address whether the Illinois Child Abuse Reporting Act affords an implied private cause of action."). Defendants' citation to *Cuyler* is irrelevant to the question of whether there is an implied right of action under the Mental Health Code.

As a federal court exercising supplemental jurisdiction over state law claims, this court must apply state law to all substantive issues. *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 696 (7th Cir. 1992). It is well settled that statutes of limitations are considered substantive in nature. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002) (citing *Guaranty Trust v. York*, 326 U.S. 99, 110 (1945)). Therefore, it is this court's duty to determine the statute of limitations that the Illinois Supreme Court would apply to Plaintiffs' claims. *Allstate Ins. Co.*,

285 F.3d at 637.

The parties do not cite to any direct guidance from the Supreme Court of Illinois on the question of whether there is a private right of action under the Mental Health Code and, if so, what the applicable statute of limitations for such a cause of action might be. Likewise, in conducting its own research, the court was unable to unearth any cases from the Supreme Court of Illinois directed to this question. When a federal court lacks direct guidance from the state court, the Seventh Circuit has determined that, "federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Id.*

In 1979, the Appellate Court of Illinois, First District, found a private right of action under what was then Section 5-3 of the Illinois Mental Health Code of 1967.[4] *Montague v. George J. London Memorial Hospital*, 396 N.E.2d 1289, 1293 (Ill. App. Ct. 1979). Relying on both public policy and legislative intent, the court found that violations of Section 5-3 led to

---

[4] Section 5-3 provided that:

Each voluntary admittee shall be allowed to leave the hospital within 5 days, excluding Saturdays, Sundays and holidays after he gives any professional staff person written notice of his desire to leave, unless prior to leaving the patient withdraws such notice by written withdrawal, or unless within said five days a petition and the certificates of two examining physicians, at least one of whom shall be a psychiatrist, are filed with the court, and the court shall order a hearing pursuant to Section 8-8. The patient may continue to be hospitalized pending a final order of the court in the court proceedings.

In 1979, the Mental Health Code of 1967 was repealed and replaced by the Mental Health and Development Disabilities Code. *Montague*, 396 N.E.2d at 1290 n. 1. At that time Section 5-3 was renumbered to Section 3-403. *Id.*

7

specific harms (including unnecessary treatment, ingestion of drugs, pain, suffering, mental anguish, and mounting medical bills) that were not adequately addressed by common law torts such as false imprisonment, assault, battery, or hospital malpractice. *Id.* at 1293-94. The court specifically rejected the defendant's argument that "private hospitals or their employees and agents" were not proper defendants under the Mental Health Code. *Id.* Of special significance to this case, the court also held that the five-year statute of limitations for "civil action[s] not otherwise provided for" applied to claims alleging violations of the Mental Health Code. *Id.* at 1293; *see* 735 Ill. Comp. Stat. 5/13-205.

Although the *Montague* court did not specifically set forth the four-part test for finding an implied right of action under Illinois law, *see Rodgers v. St. Mary's Hosp. of Decatur*, 597 N.E.2d 616, 619 (Ill. 1992), a reading of the court's decision shows that it essentially employed this same analysis. In other words, the *Montague* court determined that an implied right of action was necessary to further the underlying purpose of the Mental Health Code by redressing the plaintiff's unique harms. This court has no reason to believe that the Supreme Court of Illinois would deviate from the reasoning or holding in *Montague*. Relying on *Montague* for guidance, this court finds that the Supreme Court of Illinois is likely to recognize an implied cause of action for claims brought pursuant to the Mental Health Code, and that the applicable statute of limitations for such claims is five years. In this case, because the alleged violations of the Mental Health Code took place less than five years ago, the court finds that the statute of limitations on Counts 10-14 and 21 has not yet run.

As a procedural matter, the court declines to address Defendants' argument that, as "providers of security services," the Mental Health Code does not apply to them. Defendants

raised this argument for the first time in their reply brief, giving the Plaintiffs no opportunity to respond to an argument substantially different from the original question of whether the applicable statute of limitations barred their claims. Arguments raised for the first time on reply will generally not be addressed by the court. *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005) ("Typically, arguments first raised in a reply brief are considered waived."). Likewise, Defendants' argument that they are not "peace officers" as defined by the statute was also untimely raised.

The court rejects Defendants' underdeveloped argument that the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act", 745 Ill. Comp. Stat. 10/1-101 *et seq.*) limits the period for filing claims against Defendants to one year. The Tort Immunity Act states that:

> No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term 'civil action' includes any action, whether based on the common law or statutes or Constitution of this State.

745 Ill. Comp. Stat. 10/8-101. Defendants point out that Plaintiffs have alleged that Levy and Levy security guards were licensed in Illinois and authorized to perform Chicago Police Department functions pursuant to the Chicago Municipal Code and the Illinois Code of Civil Procedure. (First Am. Compl. ¶ 32). Without agreeing to this assertion, Defendants argue that *if* Defendants' actions were found to be actions performed by a local public entity, the Mental Health Code claims against them would be barred by the Tort Immunity Act's statute of limitations.

9

While it is true that "the comprehensive protection afforded by section 8-101 necessarily controls over other statutes of limitation," *Paszkowski v. Metro. Water Reclamation Dist. of Greater Chicago*, 820 N.E.2d 401, 408 (Ill. 2004), Defendants do not set forth any argument that Levy or its security guards should be considered either local public entities or employees of a local public entity.  The only citations provided by Defendants are to cases clearly brought against a "local entity or any of its employees." *See Tosado v. Miller*, 720 N.E.2d 1075, 1076-78 (Ill. 1999) (allegations brought against defendant Cook County Hospital and its employees); *Paszkowski*, 820 N.E.2d at 404 (noting that "sanitary districts such as defendant" are included within the Tort Immunity Act's statutory definition of "local public entity," found at 745 Ill. Comp. Stat. 10/1-206).

It is not clear to the court that Plaintiffs' assertions in paragraph 32 of their First Amended Complaint lead to the necessary conclusion that Defendants are either a "local entity" or "any of its employees" for purposes of the Tort Immunity Act.  The court therefore declines to find that Plaintiffs' Mental Health Code claims are barred by the Tort Immunity Act's statute of limitations.

Because Plaintiffs' claims pursuant to the Mental Health Code were timely alleged against defendants Thomas, Smith, and Lapinard within the applicable five-year statute of limitations, the court denies Defendants' Motion to Dismiss Counts 10-14 and 21 of the First Amended Complaint and Supplemental Complaint.

2.  Civil Conspiracy

Defendants also assert that Plaintiffs' civil conspiracy claim is governed by the two-year statute of limitations applicable to personal injury claims.  However, the case cited by

10

Defendants in support of this assertion does not address claims for civil conspiracy; rather, the case discusses conspiracy claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. *See HGN Corp. v. Chamberlain, Hrdlicka, White, Johnson & Williams*, 642 F. Supp. 1443, 1451-52 (N.D. Ill. 1986). Under Illinois law, civil conspiracy is a distinct tort that "requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'" *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (Ill. 1994)). As a common law tort, Plaintiffs' civil conspiracy claim is governed by the five-year statute of limitations that applies to "all civil actions not otherwise provided for." 735 Ill. Comp. Stat. 5/13-205; *see Gas Tech. Inst. v. Rehmat*, No. 05 C 2712, 2006 WL 3743576, at *34 (N.D. Ill. Dec. 15, 2006) (finding five-year statute of limitations applied to state law claims, including civil conspiracy to commit fraud); *Kolody v. Simon Marketing, Inc.*, No. 97 CV 0190, 1998 WL 578527, at *19 (N.D. Ill. Sept. 3, 1998) (Section 13-205 applies where plaintiff did not rely on statutory cause of action). Because Defendants have provided no applicable support for their assertion that Plaintiffs' civil conspiracy claim is subject to a two-year statute of limitations, the court denies Defendants' Motion to Dismiss as to Count 23.

3.  <u>Section 1983 Claims and Battery</u>

It is well established that the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is borrowed from the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). In Illinois, the statute of limitations on Plaintiffs' § 1983 claims is thus two years. 735 Ill. Comp. Stat. 5/13-202. The

11

same statute of limitations also applies to Plaintiffs' battery claim. *See Crockett v. City of Northlake, IL*, No. 00 C 4542, 2002 WL 31236085, at * 12 (N.D. Ill. Oct. 1, 2002).

In this case, Plaintiffs filed their original Complaint on August 30, 2004, just marking the two-year anniversary of the alleged events. However, Plaintiffs did not name the individual Defendants until more than two years after the filing of their original Complaint, on November 15, 2006.[5]

Because Plaintiffs' § 1983 and battery claims against Defendants were filed after the limitations period expired, they must be dismissed with prejudice, unless Plaintiffs can demonstrate that their claims against Defendants relate back to the original complaint, or that equitable remedies apply. *See Redmond v. Russo* No. 98 C 288, 1999 WL 446850, at *3 (N.D. Ill. June 25, 1999). In their response, Plaintiffs have argued that their claims against Defendants do relate back to the original Complaint, and that the doctrines of equitable estoppel and equitable tolling should apply to their claims. The court addresses each of these arguments in turn.

First, Plaintiffs argue that the claims in their First Amended Complaint and Supplemental Complaint relate back to the claims of the original Complaint. However, federal case law is clear that relation back only applies in cases of *mistaken* identity, and not to claims wherein the plaintiff simply does not know the identity of the proper defendant. *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). In this case, Plaintiffs knew from the beginning of their ordeal that they had claims against "John Doe Northwestern Memorial Hosp, Security

---

[5] Even if the court were to consider the Supplemental Complaint to be part of the First Amended Complaint, which was filed January 27, 2005, the filing would still be almost five months past the cut-off date.

Company," "John Doe Security Guards," and "Jane Doe Security Guards." (*See* First Am. Compl. ¶¶ 111, 131-32, 152-55) (detailing the involvement of Plaintiffs' attorney on both August 29, 2002 and August 30, 2002). Knowing that they had been wronged, it was the Plaintiffs' obligation to file their lawsuit with enough time to discover the specific identity of the unknown defendants within the applicable limitations period. *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) ("It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires."). Instead, Plaintiffs chose to file their lawsuit on (essentially) the last day of the limitations period, thus leaving themselves virtually no opportunity to conduct the discovery needed to determine the actual identity of the individual security guards. Because there has been no mistake of identity in this case, the doctrine of relation back will not operate to fix Plaintiffs' deficiency in this regard.

Plaintiffs next argue that the doctrine of equitable estoppel should apply to their claims, alleging that Defendants knowingly withheld from Plaintiffs information regarding their true identities. Under Illinois law,[6] equitable estoppel will suspend the statute of limitations "during any period in which the defendant took certain active steps to prevent the plaintiff from suing." *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006). On the other hand, "[w]ithout the misrepresentation or concealment of a material fact, equitable estoppel does not apply." *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). In this case, Plaintiffs have alleged that documents necessary to ascertain the identity of the guards on duty "were knowingly not generated to cover up the identities of those involved, or were knowingly destroyed after the filing of this claim."

---

[6] Because both equitable tolling and equitable estoppel function as "integral part[s] of the statute of limitations," this court looks to Illinois law for guidance in this area. *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006).

(Dkt. No. 173 at 8) (citing Supp. Compl. ¶¶ 53-63, 140-142). However, Plaintiffs do not argue that Defendants' actions either lulled them into a false sense of security or prevented them from realizing that they had a claim. *See Hollander*, 457 F.3d at 694. On the contrary, as discussed above, Plaintiffs allege that they knew right away that they had claims against the security guards employed at NMH. Plaintiffs nonetheless waited two years before filing their claims, leaving themselves with only three days in which to ascertain the identity of the unknown defendants before the statute of limitations ran out.[7] While Plaintiffs are allowed to support their argument with any additional allegations consistent with the First Amended Complaint and the Supplemental Complaint, *see Early*, 959 F.2d at 79, Plaintiffs have not argued that Defendants' actions *caused* them to dely their filing. *See Williams v. Sims*, 390 F.3d 958, 959 (7th Cir. 2004) (stating that equitable estoppel addresses "conduct by the defendant that prevents the plaintiff from suing within the statutory period"). The court will not assume that such was the situation.[8]

Finally, Plaintiffs argue that the doctrine of equitable tolling should apply to their claims against Defendants. The Illinois Supreme Court has said that "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (2000). On the other hand, courts have also concluded that "whether Illinois recognizes

---

[7] The earliest return of service for any defendant in this case was not executed until September 9, 2004, at which point the statute of limitations had already run.

[8] In their response, Plaintiffs argue that the "good reason why Plaintiffs could not have filed sooner" was due to "a full load of ongoing litigation, Mrs. Marx alleged mental state and David Marx's premature birth." (Dkt. No. 173 at 10).

14

equitable tolling is still unresolved because the Illinois cases mentioning the term seem to mean equitable estoppel." *Griffin v. Willoughby*, No. 4-06-0415, 2006 WL 3775299, at *7 (Ill. App. Ct. Dec. 15, 2006) (citing *Fidelity Nat'l Title Ins. Co. of New York v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006)). The Seventh Circuit has demonstrated a willingness to apply equitable tolling in situations wherein the plaintiff, through no fault of his or her own, cannot reasonably be expected to sue in time, despite the exercise of proper diligence. *See, e.g., Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 561-62 (7th Cir. 1996)*; Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

On the face of their First Amended Complaint and Supplemental Complaint, it does not appear to the court that Plaintiffs were subject to extraordinary circumstances that would have prevented them from filing in a more timely manner. However, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early*, 959 F.2d at 79 (citing *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir. 1985)). The only question at this stage in the litigation is "whether there is any set of facts that if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) (citing *Early,* 959 F.2d at 79).

In their response, Plaintiffs argue that their failure to file earlier was due to "a full load of ongoing litigation, Mrs. Marx alleged mental state and David Marx's premature birth." (Dkt. No. 173 at 10). While these factors would undoubtedly have impacted Plaintiffs' decision

15

whether to file their lawsuit at a particular time, they do not support Plaintiffs' request for equitable tolling in this case.

Plaintiffs' argument that Stacy Marx's mental state should toll the applicable statute of limitations is inconsistent with the pleadings of the First Amended Complaint. The pertinent question in cases of mental illness is whether the illness "*in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (emphasis in original). Plaintiffs allege in the First Amended Complaint that Stacy Marx fully understood that her legal rights were being violated, and that she contacted her attorney at the first available opportunity. (*See* First Am. Compl. ¶¶ 111, 131-135, 152-155). Because she understood and acted upon her legal rights, Stacy Marx's mental illness cannot be cause for equitable tolling in this case.

Furthermore, applicable case law is clear that equitable tolling only applies to situations in which plaintiffs either do not realize that their rights were violated, or where they encountered specific obstacles to filing their case in a timely manner. *See, e.g., Turner v. City of Chicago*, No. 06 C 4786, 2007 WL 707546, at *2 (N.D. Ill. Mar. 5, 2007) ("Plaintiff alleges that the promotions occurred in September 2004, but she does not say when she realized that they were unlawful. Given those allegations, it is possible that, despite her best efforts, plaintiff did not discover that the promotions were unlawful until much later."); *Nat'l Black Expo v. Clear Channel Broad., Inc.*, No. 03 C 2751, 2007 WL 495307, at *4 (N.D. Ill. Feb. 8 2007) (equitable tolling applies where plaintiff "cannot obtain information necessary to decide whether the injury is due to wrongdoing and caused by or due to the defendant"); *Clark*, 318 F.3d at 768 (finding sufficient allegations to support equitable tolling where plaintiff "made reasonably clear that he

16

was trying to allege that he did not learn of his injury until some point outside of the limitations period"); *Bontkowski*, 305 F.3d at 762-63 ("If a reasonable person in [plaintiff's] position could not have learned that he had a claim against [defendant] earlier than he learned . . . he would have a defense to the statute of limitations."); *Early*, 959 F.2d at 80 (finding sufficient allegations of tolling where plaintiff was clearly "trying to allege that the EEOC had misled him on that first visit").

Plaintiffs do not allege that they were unable to ascertain that they were the victims of wrongdoing or that they were unable to obtain the information necessary to bring a complaint. On the contrary, if taken to be true, the allegations in the First Amended Complaint and Supplemental Complaint make clear that Plaintiffs fully comprehended *at the time of the alleged violations* that their rights were being violated by individual security guards employed by Northwestern Memorial Hospital. While it may have been inconvenient, or even quite difficult, for Plaintiffs to file earlier because of financial problems, emotional problems, or medical problems, Plaintiffs themselves admit that these problems did not impact their ability to understand that they had been wronged by individual security guards.

Although Plaintiffs have been "free to allege . . . any facts [they] please[ ] that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle [them] to judgment," *Early*, 959 F.2d at 79, Plaintiffs have failed to point to any particular obstacle that prevented them from filing their claims against Defendants in a more timely manner. Plaintiffs do not argue that they made any attempt to file their Complaint prior to August 30, 2004, or that they encountered specific difficulties that prevented them from filing earlier. The court therefore finds that

17

Plaintiffs have not alleged circumstances that would support their request for equitable tolling.

Because Plaintiffs failed to name Defendants until after the two-year statute of limitations had run on their § 1983 claims and their battery claim, and because relation back, equitable estoppel, and equitable tolling do not apply to these claims, the court grants Defendants' Motion to Dismiss as to Count 8 of the First Amended Complaint, and Counts 17 and 22 of the Supplemental Complaint.

4.      Claims Brought by Plaintiff David Marx

Finally, Plaintiffs argue that Illinois law governs the statute of limitations applicable to David Marx's claims. Specifically, Plaintiffs direct the court to the following language:

> [I]f the person entitled to bring an action, specified in sections 13-201 through 13-210 of this Act, at the time the cause of action accrued, is under the age of 18 or is under a legal disability, then he or she may bring the action within 2 years after the person attains the age of 18 years or the disability is removed.

735 Ill. Comp. Stat. 5/13-211. In this case, the only counts that have been dismissed due to the running of the statute of limitations are Counts 8, 17, and 22. Because none of these claims were brought by plaintiff David Marx, Plaintiffs' argument on this point is moot.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is granted in part and denied in part. Count 8 of the First Amended Complaint and Counts 17 and 22 of the Supplemental Complaint are dismissed with prejudice as to Defendants Thomas, Smith and Lapinard. All dates in this case remain as set by the court on January 11, 2007 and March 27, 2007. (Dkt. Nos. 172, 189).

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 30, 2007